UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON RUBINSTEIN,

                              Plaintiff,                  Case No. 16-CV-2935-PAE

    v.

LANNETT COMPANY, INC.,

                              Defendant.

---

**DEFENDANT, LANNETT COMPANY, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(3) AND 12(b)(6)**

---

**FOX ROTHSCHILD LLP**
Elizabeth C. Viele, Esq.
100 Park Avenue, 15th Floor
New York, New York 10017
eviele@foxrothschild.com
Phone: 212-878-790

And

Samuel H. Israel *(pro hac vice)*
2000 Market Street, 20th Floor
Philadelphia, PA 19103
sisrael@foxrothschild.com
215-299-2886

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| FACTS | 2 |
| STANDARD OF REVIEW | 5 |
|     1. Rule 12(b)(3) Motion | 5 |
|     2. Rule 12(b)(6) Motion | 6 |
| ARGUMENT | 7 |
|     I. THE COURT SHOULD DISMISS THE COMPLAINT BASED ON THE FORUM SELECTION CLAUSE IN THE LANNETT BYLAWS. | 7 |
|     II. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. | 9 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. WestPoint–Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991)......................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................6

*Blau v. Rayette-Faberge*,
   389 F.2d 469 (2d Cir. 1968)..............................................................................10, 11

*Boilermakers Local 154 Retirement Fund v. Chevron Corporation, et al.*,
   73 A.3d 934..........................................................................................................7, 8

*The Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)...............................................5, 8

*Brennen v. Phyto-Riker Pharm., Ltd.*,
   2002 WL 1349742 (S.D.N.Y. 2002)........................................................................5

*Carnival Cruise Line v. Shute*,
   499 U.S. 585 (1991).................................................................................................9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir.1991) *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118
   L.Ed.2d 208 (1992) ..............................................................................................4, 6

*De Jesus v. Sears, Roebuck & Co., Inc.*,
   87 F.3d 65 (2d Cir. 1996).........................................................................................6

*Gilson v. Chock Full O'Nuts Corp.*,
   331 F.2d 107 (2d Cir. 1964).....................................................................................9

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009).....................................................................................6

*Jockey Int'l., Inc. v. M/V "Leverkusen Express"*,
   217 F. Supp.2d 447 (S.D.N.Y. 2002).......................................................................5

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999).....................................................................................2

*Meteoro Amusement Corp. v. Six Flags*,
   267 F.Supp.2d 263 (N.D.N.Y. 2003)................................................................2, 5, 7

*Portnoy v. Gold Reserve Corp.*,
    711 F. Supp. 565 (E.D. Wash. 1989) ................................................................................10

**Statutes**

8 Del. Code § 109(a) ..........................................................................................................2, 8

Section 12(b) of the Securities Exchange Act. ........................................................................2

Section 16 of the Securities Exchange Act. ..........................................................2, 4, 6, 9, 10

**Other Authorities**

Fed. R. Civ. P. 10(c) ..................................................................................................................6

Fed. R. Civ. P. 12(b)(3) ..................................................................................................1, 2, 5, 9

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................1

Rule 10b5 ....................................................................................................................................3

Rule 10b5-1 ................................................................................................................................3

Rule 12(b)(6) ..............................................................................................................................6

Defendant, Lannett Company, Inc. respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## PRELIMINARY STATEMENT

Lannett Company, Inc. ("Lannett"), a Delaware corporation with headquarters in Philadelphia, Pennsylvania, manufactures and distributes generic prescription (Rx) pharmaceutical products. Lannett's stock is publicly traded and is listed on the New York Stock Exchange.

Lannett's bylaws expressly provide that the Court of Chancery of the State of Delaware shall be the exclusive forum for, among other things, any derivative action brought on behalf of the company. On or about April 20, 2016, Mr. Rubinstein, a purported stockholder of Lannett, filed a complaint in this Court in a derivative capacity, seeking a legal fee for allegedly discovering a so-called "short swing" sale of stock by a Lannett officer, advising Lannett about the sale, and requesting that Lannett require the officer to disgorge the profit.

In fact, less than twenty four hours after Lannett filed a Form 4 with the Securities and Exchange Commission disclosing the stock transaction to shareholders such as Mr. Rubinstein, the Lannett officer disgorged the short swing profit of $138,285. Two days later, Lannett notified Mr. Rubinstein's counsel of the disgorgement.[1]

Mr. Rubinstein's counsel then demanded a whopping 25% contingent fee ($34,571) for what likely amounted to less than one hour of work. Lannett refused to pay a fee and Mr. Rubinstein then filed a Complaint in this Court.

---

[1] By sending the letter to Mr. Rubinstein's counsel, Lannett was not admitting that Mr. Rubinstein's letter was the motivating factor in bringing about the disgorgement of the short swing profit; it was simply responding to Mr. Rubinstein's counsel along with several other shareholders who sent letters advising of the short swing sale.

1

As more fully set forth below, Lannett's bylaws require Mr. Rubinstein to file this case in the Delaware Chancery Court. Such bylaws are presumptively valid and enforceable. As a result, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

Moreover, the Complaint fails to state a claim upon which relief may be granted. Based on the allegations in the Complaint, and after considering the documents integral to the Complaint, the Court should conclude that an award of legal fees in this case in not warranted as a matter of law. For all of the following reasons, the Complaint should be dismissed with prejudice.

## FACTS[2]

The Complaint alleges, incorrectly, that Lannett is a Pennsylvania corporation (it is a Delaware corporation) with its principal offices located in Philadelphia, Pennsylvania. Complaint at ¶ 3. Lannett is a public company whose issued and outstanding stock are registered pursuant to Section 12(b) of the Securities Exchange Act. *Id.* at ¶ 4. Lannett's directors, officers and 10% shareholders are subject to reporting and compliance under Section 16 of the Securities Exchange Act. *Id.* Under Lannett's Certificate of Incorporation, "[t]he Board of Directors is authorized and empowered to make, alter, amend and rescind any and all of the By-laws of the Corporation, but By-laws made by the Board may be altered or repealed, and new By-laws made, by the stockholders."[3] *See* Certificate of Incorporation of Lannett Company, Inc., Section 5, attached to the Declaration of Elizabeth C. Viele (the "Viele Decl.") as Exhibit A.[4]

---

[2] For the purpose of the instant motion, the Court may accept all factual allegations in the Complaint as true. *See e.g., Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).

[3] The Delaware Code provides that "any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws on the directors. . . ." 8 Del. Code § 109(a).

[4] When considering a motion to dismiss under Rule 12(b)(3), courts may examine facts outside the complaint. *See Meteoro Amusement Corp. v. Six Flags*, 267 F.Supp.2d 263, 266 (N.D.N.Y. 2003).

Lannett's Amended and Restated ByLaws, particularly relevant to the instant motion, provide:

Exclusive Forum for Stockholder Actions

> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation …

*See* Lannett's ByLaws, Article XI, attached to the Viele Decl. as Exhibit "B".

According to the Complaint, on or about September 15, 2015, Arthur Bedrosian, an officer of Lannett, sold 5,000 shares of Lannett common stock at $55.64 pursuant to an SEC Rule 10b5 plan.[5] Complaint at ¶ 7. Thereafter, on February 5, 2016, Mr. Bedrosian purchased 4,500 shares of Lannett's common stock at 24.91. *Id.* at ¶ 8. As a result of the purchase within six months of his earlier sale, Mr. Bedrosian allegedly realized a short swing profit of $138,285. *Id.* at ¶ 9.

Mr. Rubinstein is a stockholder of Lannett (*Id.* at ¶ 6). At some point not stated in the Complaint, Mr. Rubinstein allegedly retained the legal services of Miriam Tauber, Esquire, to investigate any short swing profits realized by Lannett officers, directors and 10% shareholders, demand that Lannett require disgorgement of such profits, and file suit to recover such profits in the event Lannett failed or refused to do so. *Id.* at ¶ 11.

On February 8, 2016, at approximately 4:58 p.m., Lannett filed a "Form 4" with the Securities and Exchange Commission, disclosing Mr. Bedrosian's purchase of 4,500 shares of Lannett common stock. A true and correct copy of the screen shot from SEC EDGAR website,

---

[5] SEC Rule 10b5-1 permits insiders of publicly traded companies to set up a plan to sell stock they own in a predetermined amount of stock at regular predetermined intervals.

along with the applicable Form 4, is collectively attached as Exhibit "C" to the Viele Decl.[6]
According to the Complaint, on February 8, 2016, "Plaintiff's counsel undertook to perform all legal services required pursuant to his retainer by Plaintiff, investigated the applicable law, ascertained that the transactions of [Mr. Bedrosian] in Company securities had been made in violation of Section 16(b), and computed and determined that [Mr. Bedrosian] had realized profits recoverable by Lannett in accordance with the applicable provisions of Section 16(b)." *Id.* at ¶ 13. Then, according to the Complaint, "Plaintiff, through counsel, on February 8, 2016, made written demand delivered via email on the same day to Lannett, requesting that Lannett act to recover all short swing profits of [Mr. Bedrosian] under Section 16(b). *Id.*

Thus, given that the Form 4 was filed at 4:58 p.m., Mr. Rubinstein alleges that at some point after close of business on February 8, 2016, a mere few hours after the filing of the Form 4 by Lannett, his counsel researched the law, reviewed Mr. Bedrosian's transactions, discovered the short swing profit, drafted a demand letter to the Lannett Board of Directors, and sent the letter out that very same night.[7]

Mr. Rubinstein further alleges that as a result of his demand letter, Lannett recovered the short swing profit of $138,285 from Mr. Bedrosian. *Id.* In fact, less than 24 hours after the Form

---

[6] In reviewing a motion to dismiss, the Court can consider the allegations in the Complaint as well as any documents integral to such allegations, even if not explicitly referenced in the Complaint. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991) *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Here, the allegations of the Complaint allege that on February 8, 2016, Mr. Rubinstein's counsel discovered a short swing sale. Complaint at ¶ 13. Pursuant to Section 16(a) of the Securities Exchange Act, certain insiders of a publicly traded company are required to file SEC Form 4 – Entitled "Statement of Changes in Beneficial Ownership," with the Securities and Exchange Commission. These filings are made electronically on SEC's EDGAR computer system and are accessible to the public. Thus, because the only way Mr. Rubinstein's counsel could have discovered the short swing sale is by reviewing the Form 4 filings, a copy of the Form 4, along with a screen shot of the date and time of the filing is integral to Mr. Rubinstein's claim and is thus attached hereto for the Court's consideration.

[7] Interestingly, at least four other lawyers purporting to represent other shareholders of Lannett allegedly performed the very same analysis as Mr. Rubinstein's counsel and sent separate e-mails to Lannett's Board of Directors the very same night requesting the profit be disgorged, with the first of such e-mails apparently arriving in Lannett's general e-mail box less than two hours after the Form 4 was filed.

4 was filed, Mr. Bedrosian paid Lannett the $138,285 short swing profit.  *See* Copy of (partially redacted) check from Arthur Bedrosian dated February 9, 2016, attached as Exhibit "D" to the Viele Decl.

Mr. Rubinstein then demanded that Lannett pay a 25% contingent fee, or $34,571, for what appears to be less than one hour of work.  *Id.* at ¶ 15.  Lannett declined to pay any legal fee in this instance.  According to the Complaint, Plaintiff allegedly agreed to pay his counsel a "fair and reasonable" legal fee, but his obligation is only contingent upon Lannett reimbursing him in the amount of the legal fee incurred.  *Id.* at ¶ 12.  In other words, Plaintiff's counsel has no recourse against Plaintiff for payment of her fee.  Nevertheless, Plaintiff filed the instant Complaint seeking a 25% legal fee.

## STANDARD OF REVIEW

### 1. Rule 12(b)(3) Motion

In addressing a motion to dismiss for improper venue, the Court may generally accept as true all factual allegations in the Complaint, however, it may also consider materials outside of the pleadings.  *See Meteoro*, 267 F. Supp.2d at 266 (N.D.N.Y. 2003) (*citing Brennen v. Phyto-Riker Pharm., Ltd.*, 2002 WL 1349742, *1 (S.D.N.Y. 2002).  The plaintiff has the burden of proving venue is proper.  *Id.*

Moreover, "mandatory and exclusive forum selection clauses are presumptively valid and must be enforced unless they are unreasonable or constitute the product of fraud or overreaching."  *Jockey Int'l., Inc. v. M/V "Leverkusen Express*, 217 F. Supp.2d 447, 451 (S.D.N.Y. 2002) (*citing The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).  A party attempting to "avoid a valid forum selection clause must 'show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'"  *Id.*

5

For the reasons more fully set forth below, the mandatory forum selection clause in Lannett's bylaws requires the dismissal of the Complaint.

### 2. Rule 12(b)(6) Motion

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009). However, a complaint must contain enough "factual content" to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Finally, in considering a motion to dismiss without converting it to a motion for summary judgment, the Court may consider documents attached as an exhibit thereto or incorporated by reference (*see* Fed.R.Civ.P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 69 (2d Cir. 1996)), documents "integral" to plaintiff's claims, even if they are not explicitly incorporated by reference (*Cortec,* 949 F.2d at 46–48), and matters of which judicial notice may be taken (*see Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991))."

Here, as more fully set forth below, based on prevailing Second Circuit case law interpreting the circumstances in which the award of a legal fee is, and is not, appropriate for advising a company of a violation under Section 16(b) of the Securities Act, the Complaint fails to state a claim for the award of a legal fee.

# ARGUMENT

I. **THE COURT SHOULD DISMISS THE COMPLAINT BASED ON THE FORUM SELECTION CLAUSE IN THE LANNETT BYLAWS.**

As noted above, the Court may consider materials outside of the Complaint – in this case, the Lannett bylaws, in deciding the present motion. *See Meteoro*, 267 F. Supp.2d at 266. In particular, Article XI of the bylaws provides that the sole and exclusive forum for deciding derivative actions by a stockholder is the Delaware Chancery Court. *See* ByLaws, Article XI, Exhibit "B" to Viele Decl.

There is no question the forum selection clause applies to this case. The Complaint alleges that Mr. Rubinstein retained his counsel to investigate short swing transactions, make demand upon Lannett to take action to disgorge the short swing profit and, if Lannett failed to do so, file suit on behalf of Mr. Rubinstein in a derivative capacity to have the profits disgorged. *See* Complaint at ¶ 11. In other words, Mr. Rubinstein retained counsel to represent him in a derivative capacity on behalf of Lannett and is now seeking a fee for acting in such capacity. Such an action must be brought in the Delaware Chancery Court.

Moreover, there can be no question that the forum selection clause is enforceable in this case. The Delaware Chancery Court had occasion to rule on a facial challenge to the validity and enforceability of forum selection clauses in public company bylaws. *See Boilermakers Local 154 Retirement Fund v. Chevron Corporation, et al.*, 73 A.3d 934 (Del. Ch. 2013) (attached as Exhibit "E" to Viele Decl.). In *Boilermakers*, then-Chancellor (now Justice) Strine was called upon to determine whether a bylaw, which was unilaterally adopted by a Board of Directors, and which calls for stockholder litigation regarding corporate affairs be brought exclusively in Delaware, was valid and enforceable. *Id.* at 963. The plaintiff filed a complaint seeking a determination that the bylaw at issue was invalid, arguing, among other things, it was beyond the

Board's statutory authority under the Delaware General Corporate Law to adopt such a bylaw. *Id.* at 938. The Chancery Court granted a motion to dismiss, rejecting the plaintiff's argument and holding that the bylaw was facially valid and enforceable. *Id.* at 963. The court noted that the "settled approach of [Delaware] law regarding bylaws is that courts should endeavor to enforce them to the extent that it is possible to do so without violating anyone's legal or equitable rights." *Id.* at 949. The court went on to hold that the adoption of the forum selection bylaw was authorized under 8 Del. C. § 109(b), as the issue of what forum a stockholder action must be brought falls well within the statute because it has a "proper relationship to the business of the corporation and conduct of its affair." *Id.* at 952.[8] Finally, the court rejected the argument that the bylaws were invalid because they were unilaterally adopted and did not have the assent of the stockholders. *Id.* at 954-58. It found that the Delaware General Corporate Law authorizes a company, through its certificate of incorporation, to empower a board of directors to adopt bylaws which, when a stockholder purchases stock, contractually binds the stockholder even though the bylaws were unilaterally adopted. *Id.* at 957-58.

Applying the holding in *Boilermakers* here, the forum selection clause in Lannett's bylaws is facially valid, and enforceability may only be challenged if Mr. Rubinstein can show them to be "unreasonable." *Id.* at 957 (*citing Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 10).

Moreover, enforcement of the forum selection clause in this case is not unreasonable. Lannett is a Delaware corporation with its corporate headquarters in Philadelphia (30 miles from Wilmington, Delaware). The Complaint indicates that Mr. Rubinstein is a Rhode Island resident (*see* Complaint at ¶ 6) and apparently has chosen to file suit in New York, which is over 150

---

[8] 8 Del. C. § 109(b) provides that "[t]he bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees."

8

miles away. It would be equally convenient to Mr. Rubinstein if the case were tried in Wilmington, Delaware, which is only another 120 miles from New York.

Further, it appears that Mr. Rubinstein, himself, will have minimal involvement in this case, as the dispute centers around the legal fee which his counsel seeks to impose upon Lannett. In fact, the obligation to pay any legal fee at all is non-recourse to Mr. Rubinstein – that is, if his counsel is not successful recovering any fees from Lannett, Mr. Rubinstein is not on the hook for those fees. Thus, Mr. Rubinstein's interest in the outcome of this case is minimal at best and he is certainly not inconvenienced by litigating the claim in Delaware.

Nor are there are no allegations in the Complaint suggesting that the enforcement of the forum selection clause would be unreasonable in this instance. Under the circumstances, the Court should enforce the forum selection clause in Lannett's bylaws.[9]

Accordingly, the Court should enforce the forum selection clause and dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3).

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Putting aside the forum selection clause, the Court should dismiss the Complaint with prejudice for failure to state a claim in this instance. Under prevailing Second Circuit case law, the allegations of the Complaint do not state a cognizable claim for the recovery of fees under Section 16(b) of the Securities Act of 1934.

The Second Circuit in *Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107, 110 (2d Cir. 1964), authorized an award of legal fees to an attorney who merely notified a public company of

---

[9] Proving a contractual forum selection clause is unreasonable is a significant burden. For example, in *Carnival Cruise Line v. Shute*, 499 U.S. 585, 588 (1991), the Supreme Court upheld the enforceability of a forum selection clause designating Florida as the forum for disputes which was contained in fine print on a ticket purchased by consumer in California.

9

a Section 16(b) violation (but who did not have to file a shareholder derivative action). However, in an Opinion which was issued four years later, the Court provided guidelines for when the award of such a legal fee is, and is not, appropriate, addressing and comparing the policy of encouraging shareholders to efficiently bring Section 16(b) violations to the attention of companies with a competing policy of discouraging lawyers from engaging in champerty. *See Blau v. Rayette-Faberge*, 389 F.2d 469, 473 (2d Cir. 1968). To begin with, the shareholder's notification must be the "motivating factor" in the company's recovery of the short swing profit. *Id.* at 474. Moreover, counsel fees should not "automatically [be] awarded to overzealous attorneys; nor do we want lawyers poring over 16(a) reports as soon as they are made public to find a cause of action before the corporation does and thereby collect a fee." *Id.* at 473. Rather, according to the Second Circuit:

> Reimbursement for information leading to corporate recovery will be allowed only <u>if the corporation has done nothing for a substantial period of time after the suspect transactions and its inaction is likely to continue</u>. In this way, not speed but careful investigation will be rewarded, and the corporation will have adequate opportunity to enforce its rights without prodding from a stockholder.

*Id.* (emphasis added); *see also Portnoy v. Gold Reserve Corp.*, 711 F. Supp. 565, 569 (E.D. Wash. 1989) (finding policy considerations do not favor award of legal fees where demand letter was sent almost immediately after Form 4 was filed and corporation had many months to act the before statute of limitation would run).

In this case, the allegations in the Complaint and review of attached documents integral to the Complaint, do not state a claim for the recovery of an attorney fee. Putting aside the issue of whether the letter from Mr. Rubinstein was the "motivating factor" in Lannett's recovery of the short swing profit (which is not conceded), the policy guidelines set forth in *Blau* require denial of a legal fee in this case. Specifically, the Court can take judicial notice of the date and

10

time when the Form 4 was filed (February 8, 2016, at 4:58 p.m.). *See* Screen shot of EDGAR website attached as Exhibit "C" to Viele Decl. The letter from Mr. Rubinstein's counsel advising Lannett of the short swing transaction was sent a mere few hours thereafter. Complaint at ¶ 13. Lannett clearly did not have adequate time; indeed virtually any time, to "enforce its rights without prodding from a stockholder." *See Blau*, 389 F.2d at 473.

Moreover, there are no allegations that Lannett did "nothing for a substantial period of time after the suspected transaction," nor is there any allegation that company inaction was likely to continue in the absence of notification by Mr. Rubinstein. Rather, Lannett recovered the short swing profit within 24 hours of the filing of the Form 4. Thus, recovery of a legal fee in this instance would reward "speed," rather than "careful investigation", in direct contradiction to the Second Circuit's admonition in *Blau*. Under the circumstances, a legal fee is inappropriate as a matter of law and the Complaint should be dismissed.

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed with prejudice against Lannett.

Respectfully submitted,

Dated: New York, New York
      June 10, 2016

                FOX ROTHSCHILD, LLP

                /s/ *Elizabeth C. Viele*
                Elizabeth C. Viele, Esq.
                100 Park Avenue, 15th Floor
                New York, NY 10017
                Tel: (212) 878-7900
                Fax: (212) 692-0940
                    and
                Samuel H. Israel, Esq.
                2000 Market Street, 20th Floor
                Philadelphia, PA  19103
                Tel:  (215) 299-2886
                Fax:  (215) 299-2150

                ***Attorneys for Lannett Company, Inc.***